## The A. H. Andrews Company, Plaintiff in Error, v. Robert A. Pottinger and Matilda Pottinger, Defendants in Error.

### Gen. No. 18,154.

1. BILLS AND NOTES, § 451*—*when finding as to satisfaction of indebtedness on notes not sustained by the evidence.* In an action to recover the balance due on certain promissory notes executed by defendant to plaintiff in payment for theatre chairs, a finding of the jury that plaintiff accepted payment of a certain sum in satisfaction of defendant's indebtedness on the notes, *held* not sustained by the evidence.

2. BILLS AND NOTES, § 462*—*when instruction as to satisfaction of indebtedness erroneous.* In an action on promissory notes, an instruction that if the jury believe from the evidence that on a certain day the plaintiff and defendant had an agreement that the payment of a certain sum in the manner agreed upon was to constitute a full settlement of the claim sued on, then they are instructed that such agreement constitutes a full accord and they should find for defendants, *held* erroneous, for the reason that there is uncertainty in defendants' testimony whether the alleged accord

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

was before or after the date named and that defendants' right to recover is made to depend solely on an accord, instead of an accord and satisfaction.

3. APPEAL AND ERROR, § 1539*—*when giving of instruction stating a true proposition of law prejudicial.* In an action to recover on promissory notes secured by a chattel mortgage, where the mortgagee had purchased the chattels at his own sale at an inadequate price, but the plaintiff had conceded the invalidity of the sale in his statement of claim, an instruction stating that such a sale is presumed fraudulent, though stating a true proposition of law, is not applicable to the case and the giving of the instruction *held* prejudicial error.

Error to the Municipal Court of Chicago; the Hon. FRED C. HILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and remanded. Opinion filed December 31, 1913.

GREGORY, POPPENHUSEN & McNAB, for plaintiff in error; EDWARD R. JOHNSTON, of counsel.

EDMUND W. FROEHLICH, for defendants in error.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The A. H. Andrews Company brought this suit to recover a balance claimed to be due on ten promissory notes, aggregating $1,651.40, secured by a chattel mortgage, all executed August 10, 1910, by defendants in error for the purchase of the seating for the Sheridan Theatre on Sheridan Road near Irving Park Boulevard, Chicago. The first of said notes fell due October 7, 1910, and plaintiff in error, the A. H. Andrews Company, elected to and did declare all of the notes due, and on October 15, 1910, took possession of the chairs in said theatre, and on a sale thereof under the mortgage, October 20, 1910, Joseph G. Murphy bought them in for the mortgagee company for $50. In its amended statement of claim plaintiff in error, recognizing the invalidity of said sale, alleged that the fair and reasonable cash value of said chairs so by it taken

was $796, and conceded and gave credit on said notes for said sum, claiming a net balance of $854.60 and interest thereon from October 20, 1910, for said notes and costs of foreclosure. Defendants in error stated their defense to be a complete settlement of all matters between the parties about November 2, 1910, which settlement constituted an accord and satisfaction of all claims then existing including the claim in suit. Also, that the then fair and reasonable value of the chairs when retaken by plaintiff in error equalled the full amount of the notes in suit. The jury found the issues for defendants in error, and replied, in answer to a special interrogatory, in substance, that plaintiff in error accepted $710 in money about November 2, 1910, and the sum of $930.01 about December 5, 1910, in satisfaction of his indebtedness to it, on said ten notes. The court entered judgment accordingly for defendants in error.

The plaintiff in error proved by three expert witnesses who saw the 644 chairs on the day of their removal that the total value of the chairs retaken under the mortgage was about $800. Some of the reasons given for the depreciation in value were that the chairs were soiled and scratched and that about ten per cent. of the castings thereon were broken when removed; that there is no market for such secondhand chairs, as the chairs in question were specially made for, and fitted in, the Sheridan theatre building, and would not fit the circles and rises in the floors of other buildings; and that for 440 of them it would cost about thirty cents a piece to replace them in another building, which cost was a part of the original price of defendants in error. Defendants in error offered no evidence to rebut that testimony, but relied solely on their proof of an accord and satisfaction. The evidence under that plea was that in September, 1909, defendant in error, Robert A. Pottinger, bought from plaintiff in error other opera chairs for his vaudeville house known as the "Mabel Theatre," 3956-8 Elston avenue, Chicago, for the pur-

448    Appellate Courts of Illinois.

The A. H. Andrews Co. v. Pottinger et al., 184 Ill. App. 445.

chase price of $1,524.82, which was also secured by notes and a chattel mortgage. No part of the purchase price being paid when the first payment became due, plaintiff in error in October, 1910, took possession of those chairs and placed a custodian in charge of them, but they were not removed from the building as Pottinger insisted that he could and would raise the money to pay for them. On November 2, 1910, Pottinger and his wife, Matilda, signed what the parties called a lease for the Mabel theatre chairs in which they agreed to pay in advance the sum of $710 as rental for said chairs for thirty days from the date thereof, and were given in said lease an option to purchase said chairs for the sum of $930.01 in cash if paid at the end of said lease, December 2, 1910, and in case of default in payment of said last sum on the day named said option was to cease, and that the other party thereto, John G. Murphy, who was a representative of plaintiff in error, should retake said chairs and remove them from said building. Nothing is mentioned in that lease about the Sheridan theatre chairs. The accord claimed by defendants in error, they insist, was made at the time an understanding was reached by the parties in regard to the making of said lease, and it is supported only by their own testimony. Robert A. Pottinger's testimony thereon is, in substance, as follows: "I had a further talk with Mr. Merle (manager of plaintiff in error), I think it was the 15th or 20th of October before the sale at his office. I told him if he would wait a while I could raise the money to make these payments. He said he wanted the money or the chairs. I wanted to take both chairs (both sets of chairs) from him and pay him $250, and he would not accept that proposition. He said he would have to have all the money within thirty days, part of it now, and the balance within thirty days, which I was unable to raise. Then I said I would take the Mabel chairs and pay it half cash and the balance in thirty days, and that was decided upon. He said he would

take the Sheridan chairs out because they were in good condition. The Mabel chairs had been in the house about a year, he said. On the day of the sale, I told him I would be in a position to straighten the thing up in a few days. He said, 'Well, we will go ahead and sell the chairs and you come in.' I had occasion to see him again about the 2nd of November at his office. Mr. Merle, myself and my wife were present, I had with me $700. I told him I would pay him $700 on the Mabel chairs. Then he began to figure up and said, 'You are short. You didn't figure the expenses, did you?' I said, 'No, I forgot it, I haven't got it.' 'Well, I will add that in to the next month,' he said. So the expenses were added in, and I paid him something like $1640, including the cost of the chairs and the expenses, both on the Mabel. I paid him $610 cash, and a check for one hundred dollars, and executed a lease on account of these Mabel chairs. He spoke of the expense of the cost of taking the Sheridan theatre chairs out and the expense of the sale. At that time I don't think we spoke about the Sheridan chairs, only to buy some back. I bought forty chairs that had been taken out of the Sheridan theatre. We paid for them separate in cash (40 chairs @ $2.25, $90). I received a receipt for the $710 at that time, and a receipt for the ninety dollars. I saw Mr. Merle again about December 5th. I had a talk with him about a check my wife took to him for the balance due, and he told me he would not accept it, that I had drawn it to A. H. Andrews & Company, and he wanted it made to Mr. Murphy, and I said, 'all right.' I made out a new check to Joseph Murphy for the same amount and gave it to him in payment of the lease. Mr. Merle never asked me to pay those notes for the Sheridan Theatre chairs until this suit.''

On cross-examination he testified: ''After the sale I had kind of given up hope of holding the Sheridan any more. I was trying to keep the Mabel. Mr. Merle told me that he would accept the amount which we

450    Appellate Courts of Illinois.

The A. H. Andrews Co. v. Pottinger et al., 184 Ill. App. 445.

agreed on, $700 and $900, and some odd dollars in full settlement of both matters, if I would pay the expenses on the Sheridan chairs and pay the full amount of the Mabel chairs, not the lease, we made the lease after that.'' And again referring to their talk of November 2nd, he testified in substance that they talked about settlement of the Sheridan theatre matter and that they did settle it ''by paying the cost and one thing and another,'' and that Merle told him he would accept the $710 and the $930.01 in full of both matters, and that they were so settled up in full.

Mrs. Matilda Pottinger testified that she was the wife of Robert Pottinger; that the first time she had anything to do with the business after signing the notes was November 2nd, when the first payment was made on the Mabel chairs at Mr. Merle's office; that Mr. Pottinger did all the talking; that he bought some chairs back for the Sheridan theatre, and paid him $710 on the Mabel chairs; that Mr. Merle said he included custodian's fees and expenses for both the Sheridan and Mabel theatres and that a receipt was given for the $710; that there was not much said about the Sheridan theatre expense; that Mr. Merle just said, ''You didn't figure the costs of the expenses,'' and he wrote down the custodian's fees for the Sheridan and Mabel theatre; that he made that remark to Mr. Pottinger, and she saw him writing it but didn't see the paper; that she did not hear anything further about the Sheridan job except that they bought forty chairs for that theatre; that on December 3d, she took down a certified check to Mr. Merle for $930.01 and that he refused to take it because it was payable to The A. H. Andrews Company and not to Mr. Murphy, and because there was written on the bottom of the check, ''In full payment of the Sheridan and Mabel chairs;'' that he finally agreed to accept it if they would bring down another check without the words at the bottom of the check.

Mr. Pottinger was positively contradicted *in toto* by Mr. Merle's evidence on the alleged accord and satisfaction and by James D. Irving, a salesman of plaintiff in error, who testified he heard all that was said between the parties November 2d. He is also contradicted by Edward R. Johnson who testified he gave Pottinger on November 2d an exhibit on a paper of all the items composing the consideration of $1,640.01 named in the lease in the amounts $710 and $930.01, which exhibit was in evidence and makes no reference to the Sheridan chairs. The receipts taken by him for the $710 and the $930.01 also specified that the money was received in payment of rental and for the purchase of the Mabel chairs, without any reference to the Sheridan chairs. The lease itself corroborated in the same way plaintiff in error's evidence. Pottinger's own testimony is contradictory and is not supported in the main by that of Mrs. Pottinger as to the accord and satisfaction. The verdict and special finding of the jury are manifestly against the weight of the evidence and the same must be set aside for that reason. *Donelson v. East St. Louis & S. Ry. Co.,* 235 Ill. 625.

The court also erred in giving to the jury two instructions, towit:

1. "That if they believe from the evidence that on the 2nd day of November, 1910, the plaintiff and defendants had an agreement or understanding to the effect that the payment of the sum of $1640 in the manner agreed upon was to constitute a full settlement of the claim sued on in this case, then they are instructed that such agreement constituted a full accord and that the jury must then find the issues for the defendants."

2. "A mortgagee has no right to buy at its own sale, and that such purchase in this case, together with the inadequacy of the consideration paid for such chairs, raises the presumption that said sale under said foreclosure, was fraudulent and illegal, unless you find from the evidence herein that defendants had full

knowledge of such purchase and that said purchase was made with defendant's consent.''

Instruction No. 1 is erroneous because it makes the right of defendants in error to recover to depend upon an accord, simply, instead of an accord and satisfaction. There was an uncertainty in the testimony of defendants in error as to whether the alleged accord was before or on November 2d, when the lease was made. Not only must there have been an agreement that both claims were to be settled for the amount named in the lease, but it must have been carried out by the payment of said sum by defendants in error to plaintiff in error, and an acceptance thereof by plaintiff in error in satisfaction of both claims. It is true no doubt that if such an agreement was in fact made and plaintiff in error accepted the first payment of $710 in pursuance of such an agreement, it would be estopped to insist there was no accord and satisfaction because it refused to accept the second payment as in full satisfaction of both claims. The instruction, however, made the recovery to depend solely on an accord and this was error as plaintiff in error denied the accord and also the receipt of the first as well as of the second payment to be in pursuance of any agreement that they should be in full satisfaction of both claims for chairs. *American v. Rimpert*, 75 Ill. 228; *Canton Coal Co. v. Parlin & Orendorff Co.*, 215 Ill. 244; *Simmons v. Clark*, 56 Ill. 96.

Instruction No. 2, while it stated a true proposition of law, was not applicable to the case. Plaintiff in error conceded the invalidity of the sale by its statement of claim and no issue as to its validity was in the case. It was such an instruction, too, as tended to prejudice the jury, as it unnecessarily informed the jury in substance that such a sale was fraudulent.

For the errors indicated the judgment of the court is reversed and the cause is remanded.

*Reversed and remanded.*